(562 P.2d 108)
No. 48,357

JAMES D. HENDERSON, *et al., Appellant,* v. RICHARD M. HASSUR, *Appellee.*

Opinion filed March 11, 1977.

*James L. Grimes, Jr.,* of Cosgrove, Webb and Oman, of Topeka, for the appellant, James D. Henderson.

*Robert D. Ochs* and *Charles S. Fisher, Jr.,* both of Fisher, Ralston and Ochs, of Topeka, for the appellee.

FOTH, J.: This is an appeal from an order granting partial summary judgment. Questioning whether the order was appealable, we requested the parties to brief the issue of our jurisdiction. Briefs were filed and we heard argument on that issue along with argument on the merits. Despite the fact that both parties urge the appealability of the trial court's order, we have concluded we have no jurisdiction and therefore dismiss the appeal.

The action was brought by the appellant, James D. Henderson (a real estate broker), and his joint venturer, Kenneth L. Perry, for an accounting under a contract dated April 4, 1969, with the appellee, Richard M. Hassur. The contract provided that Henderson and Perry would locate potential sites in Mexico for Pizza Hut restaurants to be built, leased and operated under Hassur's franchise. For each site accepted by Hassur they were to be paid $4,000, plus 1% of the gross revenue from the restaurant for the lease term. By January 1, 1970, four sites had been acquired by Hassur, one by purchase and three by lease, for which he paid the plaintiffs the agreed $4,000 commission per site. Plaintiffs sued for an accounting of the restaurants' revenues and the 1% claimed to be due them.

In his amended answer Hassur alleged that, by reason of their breach of contract and their breach of the fiduciary duties owed him, plaintiffs had forfeited all commissions which they otherwise would have earned under the contract. This defense was based on the fact that Henderson had a secret agreement with a Mexican builder and real estate man to share in a $32,000 profit on the one site purchased by Hassur, and to share in the profits from constructing the buildings at all four sites. Hassur also counterclaimed for the $32,000 profit shared by Henderson and

his Mexican coventurer, for return of the $16,000 previously paid to Henderson and Perry, and for punitive damages. The counterclaim was based on the same secret agreement that constituted the defense.

Perry filed a cross-claim for indemnity against his coplaintiff Henderson, alleging he had no knowledge of and was not privy to Henderson's dealings with the Mexican entrepreneur.

In ruling on Hassur's and Perry's motions for summary judgment the trial court found no material facts in dispute. It found from Henderson's own testimony that he did have a secret agreement to profit at Hassur's expense; that the agreement covered dealings at all four sites and therefore permeated their entire relationship; and that Perry had no prior knowledge of it. It also found that Henderson and Perry owed a fiduciary duty to their principal, Hassur, which was breached by the secret profit arrangement. It therefore, by Journal Entry filed July 16, 1975, rendered summary judgment as follows:

(a) For the defendant Hassur on the question of liability.

(b) For Hassur against Henderson and Perry for the $32,000 profit realized by Henderson and his Mexican coventurer on the land sale, plus interest.

(c) For Hassur against Henderson and Perry for return of the $16,000 in commissions already paid, plus interest.

(d) For Perry against Henderson for indemnity on both those judgments.

The court expressly reserved for future trial the issue of punitive damages, and all further claims of Perry against Henderson. (These would include not only indemnity for any punitive damages due Hassur, but also a claim for Perry's share of the 1% of gross revenues, apparently lost through Henderson's actions.)

Henderson thereupon took this appeal. It was originally docketed in the Supreme Court, and was transferred to this court pursuant to K.S.A. 1976 Supp. 20-3018 (*a*). Our jurisdiction depends on whether the Supreme Court had jurisdiction in the first instance.

Appellate jurisdiction is a matter of statute. In civil cases, at the time this appeal was taken, the applicable statutes were K.S.A. 60-2101 and 60-2102 (Corrick 1964). The former defined the powers of the Supreme Court when its appellate jurisdiction was properly invoked, the latter prescribed the instances in which that

jurisdiction could be invoked. Appeals as of right were covered by 60-2102 (*a*); as applied to this case the only relevant provision was subsection (4), covering a "final decision in any action."

That language was considered by our Supreme Court soon after its adoption in *Connell v. State Highway Commission*, 192 Kan. 371, 388 P. 2d 637, where it was said:

"No attempt was made to define the word 'final' and confuse the issue. The word is to be given its ordinary meaning. A judgment or an order is to be considered as final if all the issues in the case are determined, not just part of the issues. The last sentence of the paragraph quoted above [60-2102 (*a*) (4)] protects the right to have a review of interlocutory or intermediate orders on appeal from the final determination of the case." (p. 374.)

The order in this case was not "final" under the *Connell* definition since the trial court retained jurisdiction of several issues. It was not an order by which "all the issues in the case are determined."

It is suggested, however, that the order is "final" because where multiple claims are involved a final judgment as to less than all such claims was authorized under some circumstances by K.S.A. (then 1974 Supp.) 60-254 (*b*). That section provided:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a *final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.* In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form or decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." (Emphasis added.)

Construing this section, in *Stock v. Nordhus*, 216 Kan. 779, 533 P. 2d 1324, the court held that an order under 60-254 (*b*) which dismissed a compulsory counterclaim was not appealable but was interlocutory in nature. Since it arose out of the same transaction as the main claim it could not be finally adjudicated separately from the main claim. And see, *Meddles v. Western Power Div. of Central Tel. & Utilities Corp.*, 219 Kan. 331, 548 P. 2d 476, where the appeal was dismissed on the court's own motion because summary judgments on liability and indemnity did not dispose of the lawsuit and were therefore interlocutory.

In those cases, as in the case at bar, there was no "express determination that there is not just reason for delay" nor any "express direction for the entry of judgment" as authorized by the statute. Such an "express" determination and direction is known in the parlance of the federal court practitioner as a "Rule 54(*b*) certificate." The name derives from the rule of federal procedure from which our 60-254 (*b*) is derived, and federal decisions construing the rule are generally followed in this state. *Stock v. Nordhus,* supra.

A 54(*b*) certificate is essential to make a judgment as to one claim or one party appealable. In the absence of such a certificate it was held that a summary judgment in favor of one of several defendants on the issue of liability was interlocutory and not appealable as of right. *Fredricks v. Foltz,* 221 Kan. 28, 557 P. 2d 1252. That was so even though the practical effect of the order was to release that defendant from further participation in the lawsuit, and to deprive the plaintiff of his choice of venue which was dependent on the released defendant's continued presence.

At oral argument counsel for appellant stated that the transcript of the hearing at which the partial summary judgment was granted would show that the trial court *implicitly* made the requisite findings for a 54(*b*) certificate. From our examination of the transcript we cannot so find. At the hearing counsel initially moved for an *interlocutory appeal* certificate pursuant to K.S.A. 60-2102 (*b*), covering orders "not otherwise appealable." When the trial court suggested that the order might be final counsel added, "I came here anticipating that we would have an interlocutory situation." After considerable discussion and when all was said and done, the trial court said it would grant the request for an interlocutory appeal certificate, and asked that the journal entry reflect that the court strongly urged the appellate court to accept the appeal. Counsel's final words on this subject at the hearing reflect his concern over the effective date of the order, since he would have only "ten days in which to file any notice of appeal." The reference could only be to the time limit for applying for permission to take an interlocutory appeal under 60-2102 (*b*). Appellant nonetheless chose (by failing to file such an application within ten days) not to treat this appeal as interlocutory but rather as an appeal from a final order. We are therefore precluded from considering it under 2102 (*b*).

Even assuming that the trial court did implicitly issue the certificate, we are not bound thereby. The claim of Hassur against Henderson, for two elements of actual damages and for punitive damages, presents but one legal right—Henderson's breach of fiduciary duty. The fact that more than one element of damages is sought does not destroy the unity of the claim.

*Liberty Mutual Ins. Co. v. Wetzel,* 424 U.S. 737, 47 L. Ed. 2d 435, 96 S. Ct. 1202, is the latest construction of Rule 54(*b*) by the high court of which we are aware. That was a Title VII discrimination action (42 U.S.C. § 2000e, *et seq.*) seeking injunctive, compensatory and punitive relief as well as attorney's fees. The trial court granted summary judgment only as to liability and issued a 54(*b*) certificate. In finding that it was without jurisdiction the Supreme Court stated:

"Rule 54(b) 'does not apply to a single claim action . . . . It is limited expressly to multiple claims actions in which "one or more but less than all" of the multiple claims have been finally decided and are found otherwise to be ready for appeal.' *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 435 [100 L. Ed. 1297, 76 S. Ct. 895] (1956). Here, however, respondents set forth but a single claim: that petitioner's employee insurance benefits and maternity leave regulations discriminated against its women employees in violation of Title VII of the Civil Rights Act of 1964. They prayed for several different types of relief in the event that they sustained the allegations of their complaint . . . but their complaint advanced a single legal theory which was applied to only one set of facts. Thus, despite the fact that the District Court undoubtedly made the findings required under the Rule, had it been applicable, those findings do not in a case such as this make the order appealable pursuant to 28 U.S.C. § 1291. See *Mackey, supra,* at 437-438." (pp. 742-4.)

"We need not here attempt any definitive resolution of the meaning of what constitutes a claim for relief within the meaning of the Rules. See 6 J. Moore, Federal Practice ¶¶ 54.24, 54.33 (2d ed. 1975). It is sufficient to recognize that a complaint asserting only one legal right, even if seeking multiple remedies for the alleged violation of that right, states a single claim for relief." (*Id.* at 743, n. 4.)

The Court also considered other jurisdictional theories and noted that the appeal was not taken within ten days as required by the interlocutory appeal statute, and there was no assurance that the Court of Appeals would have exercised its discretion to hear the appeal even if application had been timely made. The judgment of the Court of Appeals was therefore vacated with directions to dismiss the appeal. The same procedural failure is of course present in the instant case, preventing our consideration of this case as an interlocutory appeal. More importantly, the case

demonstrates that there could be no "final" judgment for Hassur's actual damages while the issue of punitive damages was still undecided.

*Cinerama, Inc. v. Sweet Music, S. A.*, 482 F. 2d 66 (2d Cir. 1973), is closely analogous to the case at bar. The plaintiff, Cinerama, brought an action against Sweet Music and a bank for a declaratory judgment that it was not liable as guarantor of a loan from the bank to Sweet Music. The bank counterclaimed for the amount of the loan plus interest. The trial court by way of summary judgment dismissed Cinerama's declaratory judgment claim and granted judgment to the bank for the principal amount of the guarantee; the question of interest was reserved, and a 54(*b*) certificate was issued. The Court of Appeals found itself without jurisdiction:

"Since multiple parties were here involved, there is no doubt that the district court could properly have made the specified direction if it had fully disposed of the separate claim between Cinerama and the Union Bank although it has not determined the controversy between Cinerama and Sweet Music. The propriety of such a disposition, however, does not invest the district court with greater power to characterize a partial disposition of a claim between Cinerama and the Bank as final than if Sweet Music had not been a party. It is settled that, in making the requisite determination and direction under F.R.Civ.P. 54(b), '[t]he District Court *cannot*, in the exercise of its discretion, treat as "final" that which is not "final" within the meaning of [28 U.S.C.] § 1291' (emphasis in original), and that 'any abuse of that discretion remains reviewable by the Court of Appeals.' Sears, Roebuck & Co. v. Mackey [supra at 437].

"We see no basis for the apparent belief of the district court that it could sever the Bank's claim for principal from its claim for prejudgment interest and render a 'final' judgment only for the former. Since the same operative facts that created the right to recover principal gave rise to the right to recover interest, there was but a single claim, as would be evident if the Bank had counterclaimed only for principal and, after obtaining judgment, had endeavored to sue for prejudgment interest." (p. 69.)

The Court discussed and relied on its earlier opinion in *Aetna Casualty & Surety Company v. Giesow*, 412 F. 2d 468 (2d Cir. 1969), wherein it had held that the issues of damages and counsel fees were so inexorably interconnected as to make them a single claim. The court further noted:

"The final judgment rule is designed not merely to prevent an appeal on an *issue* concerning which the trial court has not yet made up its mind beyond possibility of change but also to eliminate the need for separate appellate consideration of different elements of a single claim. The burgeoning loads of the courts of appeals mandate strict adherence to this salutary policy." (482 F. 2d at 70.)

Our statute is aimed at precisely this situation, *i.e.*, the practice of "piecemeal appeals." *Connell v. State Highway Commission*, supra. To review the instant case and subsequently review the claim for punitive damages would be a waste of judicial time and energy, and it is for that reason our statutes deny jurisdiction.

Neither does the fact that there is both a claim and a counterclaim present "more than one claim for relief." *Cinerama, Inc. v. Sweet Music, S. A.*, supra. Appellant asserts in his supplemental brief that "the claim and the counterclaims are so intertwined that a decision on one necessarily involves a decision on the other." We agree, and for that reason cannot separate them into two distinct claims.

In *Seaboard Machinery Corp. v. Seaboard Machinery Corp.*, 267 F. 2d 178 (2d Cir. 1959), the plaintiffs/purchasers alleged breach of warranty and fraud in the sale of the assets of the defendant corporation, which counterclaimed on the notes given in payment. The Court found the entire action to be but a single claim:

"All the counts—and the counterclaim as well—arise out of a single contract, that of June 12, 1951, whereby the defendant New Jersey corporation sold all of its business and assets to the plaintiff Delaware corporation. The plaintiffs claim fraud and breach of warranty in their purchase, and each count sets forth some aspect of this over-all claim. . . . The counterclaim sought judgment upon the notes given in payment of the purchase price. . . . But this does not qualify or destroy the essential unity of the claim. The appeal must therefore be dismissed." (267 F. 2d at 179-80.)

Similarly in *Carter v. Croswell*, 323 F. 2d 696 (5th Cir. 1963), opposing claims of negligence stemming from an auto crash were held to be the same claim, though contained in separate pleadings by opposing parties.

Illustrative of a case where the claim and counterclaim are so distinct as to warrant a 54(*b*) certificate is *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 64 F. R. D. 135 (E. D. Pa. 1974). There the plaintiff manufacturer brought suit for the price of transformers purchased by the defendant, and the defendant counterclaimed for damages caused by defective circuit breakers sold by the plaintiff. Though conceding the validity of plaintiff's claim, the electric company argued that its counterclaim was a setoff precluding summary judgment as a final order. The court said:

"PECO asserts that this Court should consider its counterclaim as a factual defense, since it is considered such under State law, and that this characterization alone renders PECO's claim sufficiently related to the plaintiff's claim to defeat summary judgment. However, what is essential is not the term used to describe defendant's counterclaim but *whether that claim is a separate and independent cause of action* [citation omitted], and *whether it is so closely related to the claim on which summary judgment is sought that an issue of fact in one may prove to be important to both* [citation omitted]. Since defendant's counterclaim does state a separate and independent cause of action, and since it presents no issues of fact which may prove important to plaintiff's claim, the entry of summary judgment on plaintiff's claim is not only proper but is required under Federal Rule 56." (64 F. R. D. at 139-40. Emphasis added.)

A 54(*b*) certificate was issued. While that order was vacated in *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F. 2d 360 (3d Cir. 1975), the Court of Appeals did not hold that a 54(*b*) certificate had been improper, but only that a more precise statement of reasons was required to permit that determination. *Id.* at 367, n. 16. There was no disagreement with the trial court's reasoning that if the counterclaim is in fact a defense to the plaintiff's claim the two cannot be separately decided or a 54(*b*) certificate issued on either one. Only where they are separate and independent causes of action is a 54(*b*) certificate proper.

Other cases standing for the principle that the relationship of the opposing claims is a primary factor to be considered in granting a 54(*b*) certificate include *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 100 L. Ed. 1297, 76 S. Ct. 895; *Cold Metal Process Co. v. United Co.*, 351 U.S. 445, 100 L. Ed. 1311, 76 S. Ct. 904; *Reines Distributors, Inc. v. Admiral Corporation*, 31 F. R. D. 187 (S. D. N. Y. 1962); *Gaetano Marzotto & Figli, S. P. A. v. G. A. Vedovi & Co.*, 28 F. R. D. 320 (S. D. N. Y. 1961).

We believe the counterclaim in this case is "so inherently inseparable from, or closely related to" (*Sears, Roebuck & Co. v. Mackey*, supra at 436) Henderson's claim that a disposition of both is required for a "final decision." The same alleged breach is not only the basis for the counterclaim but for the defense to the main claim. As previously indicated, the counterclaim cannot be considered disposed of until the punitive damage issue is adjudicated. Hence there is as yet no "final decision" from which an appeal may be taken as a matter of right.

The cases relied on by the parties do not persuade us otherwise. Henderson cites four federal cases. In two of those (*Olympic*

*Junior, Inc. v. David Crystal, Inc.*, 463 F. 2d 1141 [3d Cir. 1972]; *Bushie v. Stenocord Corporation*, 460 F. 2d 116 [9th Cir. 1972]), the courts, in footnotes, appear to state that the mere issuance of a 54(*b*) certificate grants jurisdiction. That is not the rule. *Liberty Mutual Ins. Co. v. Wetzel*, supra. Further, no certificate was issued here. The third (*Travelers Indemnity Company v. Erickson's, Inc.*, 396 F. 2d 134 [5th Cir. 1968]), sought to resolve whether there were "multiple claims," but noted specifically that no 54(*b*) determination had been made. And in the fourth case (*Schroeter v. Ralph Wilson Plastics, Inc.*, 49 F. R. D. 323 [S. D. N. Y. 1969]), it was held that summary judgment on a counterclaim of an independent nature was interlocutory; the question of finality was left for a 54(*b*) motion.

Hassur relies on *Page v. Hamilton*, 329 S. W. 2d 758 (Mo. 1959). That case was decided under a Missouri statute providing that when a new trial is granted any aggrieved party may appeal on all or part of the issues. *Beckham v. Hartford Accident & Indemnity Company*, 137 So. 2d 99 (La. Ct. App. 1962), involved that state's unique procedure under which all summary judgments are final. *Kansas Commission on Civil Rights v. Sears, Roebuck & Co.*, 216 Kan. 306, 532 P. 2d 1263, was an appeal from an order enforcing an administrative subpoena. Once the order of enforcement was entered the litigation in the district court had run its course, and there were no issues undecided. The order appealed from there was a "final decision" and clearly appealable. None of the cases cited are analogous to the case at bar.

In holding that the order here is not final we do not reach the question of whether summary judgment was appropriate under K.S.A. 60-256. The partial summary judgment simply remains interlocutory and is subject to revision (K.S.A. 60-254 [*b*]) until a final judgment is entered. (*Fredricks v. Foltz*, supra; *Stock v. Nordhus*, supra.)

We are not unmindful of the parties' argument that a dismissal now will result in additional delay and expense. Jurisdiction, however, is not a matter of discretion. It is the duty of an appellate court on its own motion to raise the question of its jurisdiction, and when the record discloses a lack of jurisdiction it must dismiss the appeal. *Meddles v. Western Power Div. of Central Tel. & Utilities Corp.*, supra, Syl. 1; *State , v. Thompson*, 221 Kan. 165, 558 P. 2d 1079. We can only suggest that should a

future appeal be taken in this case from a "final decision," a motion to utilize the present record and briefs, suitably supplemented, would be favorably received.

The appeal is dismissed.