(18 P.3d 283)

No. 84,197

DARYL BUGNER, *Appellee*, v. FARM BUREAU MUTUAL INSURANCE COMPANY, *Appellant*.

Opinion filed January 26, 2001.

*Marc A. Powell,* of Powell, Brewer & Gough, L.L.P., of Wichita, for appellant.

*Gerald W. Scott* and *Mark A. Scott,* of Wichita, for appellee.

Before MARQUARDT, P.J., GREEN, J., and BUCHELE, S.J.

GREEN, J.: Farm Bureau Mutual Insurance Company (Farm Bureau) appeals from a judgment recovered by its insured, Daryl Bugner, under the uninsured motorist provision of his truck insurance policy. Erin Lathen, an uninsured motorist, sued Daryl for personal injuries she suffered when she drove her car into his cow and later into his truck. Daryl, who also was injured in the collision with Erin's car, later sued Farm Bureau in a separate action. In Erin's suit against Daryl, the jury determined that Daryl was 65% at fault, that his brother, Darran Bugner, was 25% at fault, and that Erin was 10% at fault in causing the accident. Nevertheless, the jury in Daryl's suit against Farm Bureau determined that Erin was 100% at fault in causing the accident. On appeal, we must determine whether Daryl is bound by the jury's determination of the comparative fault of the parties in Erin's suit. We reverse.

When the Sedgwick County sheriff's department received a call that a cow was on the highway, the department sent a deputy to remove the cow from the highway. Darran and the deputy guided the cow into a field. After the deputy left, the cow returned to the highway.

Daryl arrived to help his brother. Daryl and Darran used their trucks to drive the cow alongside the highway. The trucks had their

emergency flashers on. The cow was in the middle of the highway when Daryl saw Erin's car approaching at a high rate of speed. He attempted to warn her of the cow by flashing his headlights on and off.

Darran was parked on the east shoulder of the northbound lanes of the highway trying to drive the cow off the roadway. He too flashed his lights, but Erin did not slow down. Erin struck the cow, veered off the road, and hit Daryl's truck, injuring Daryl. There was no indication Erin attempted to stop or to avoid either the cow or the truck. An expert testified that Erin was travelling between 51 and 53 miles per hour when she struck the cow. Erin testified she was looking at Darran's truck on the side of the road when she struck the cow. Although she stated she took her foot off the gas, she failed to apply her brakes until just before striking the cow.

Erin was injured in the collisions. Erin sued Daryl, and Daryl later sued his insurance company, Farm Bureau, under the uninsured motorist provision of his truck insurance policy. The cases were consolidated for discovery.

When Farm Bureau moved to consolidate the cases for trial, all the other parties objected to the consolidation. A lengthy hearing was held on the motion to consolidate. The trial court denied the motion to consolidate and ordered the *Lathen v. Bugner* case be tried before the *Bugner v. Farm Bureau* case.

At the pretrial conference, Daryl offered to withdraw his counterclaim against Erin if the parties would agree that the finding of fault in the *Lathen v. Bugner* case would not be binding in the *Bugner v. Farm Bureau* case. All parties except Farm Bureau agreed. Farm Bureau objected, claiming that the trial court previously determined that the liability determinations of the first trial would be binding on the second trial.

Nevertheless, the court determined that Farm Bureau did not have standing to make the objection because it was not a party in the *Lathan v. Bugner* case. As a result, the final pretrial order stated: "The findings in this case are binding only on the parties in this case for the issues in this case and these findings do not bind any parties herein in any other action." Daryl later dismissed his counterclaim without prejudice. In the *Lathan v. Bugner* case, the

jury found Erin 10% at fault, Darran Bugner 25% at fault, and Daryl Bugner 65% at fault.

Arguing the rule that "all issues in a lawsuit should be tried in one trial," Farm Bureau moved for judgment on the pleadings in the *Bugner v. Farm Bureau* case. In denying the motion, the trial court stated:

"I agree with Judge Malone. But, that's not for me to decide. If Judge Malone's order was wrong and it should have been consolidated, that's a problem for the Court of Appeals. If Judge Anderson's order was wrong, that's a problem for the Court of Appeals. And I'm not gonna substitute my judgment for theirs.

"So the motion for judgment on the pleadings will be denied."

The jury later determined that Erin was 100% at fault and awarded Daryl damages of $91,152.25.

Farm Bureau argues that once a jury had returned a verdict indicating the comparative fault of the parties, any new proceedings are impermissible under Kansas law. This is a question of law involving statutory interpretation and our review is unlimited. *Rose & Nelson v. Frank*, 25 Kan. App. 2d 22, 24, 956 P.2d 729, *rev. denied* 265 Kan. 886 (1998). As a general rule, statutes are construed to avoid unreasonable results. There is a presumption that the legislature does not intend to enact useless or meaningless legislation. *KPERS v Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997).

The issue presented to us is whether the trial court's failure to consolidate the previously mentioned cases or its failure to hold that the comparative fault determination in the *Lathen v. Bugner* case would be binding in the *Bugner v. Farm Bureau* case is violative of the one-trial rule.

Our Supreme Court pointed out in *Guillan v. Watts*, 249 Kan. 606, 610, 822 P.2d 582 (1991), that the legislature in adopting comparative negligence intended the parties to

"fully and finally litigate in a single action all causes of actions and claims for damages arising out of any act of negligence, but it was never the legislature's intent or the intent of the courts to place form over substance and preclude a plaintiff from proceeding against a tortfeasor when there has been no judicial determination of comparative fault."

*Guillan* reiterated Kansas public policy that all issues in a lawsuit should be tried in one trial.

Nevertheless, Daryl argues that his separate suit against Farm Bureau is permitted under *Winner v. Ratzlaff*, 211 Kan. 59, 505 P.2d 606 (1973). In considering what is now K.S.A. 40-284(a) and in determining that an insured with an uninsured motorist claim has three choices, the *Winner* court stated:

> "He may file an action directly against his uninsured motorist liability carrier without joining the uninsured motorist as a party defendant; he may file an action joining both the insurer and the uninsured motorist as party defendants; or, he may file an action against the uninsured motorist alone without joining the insurer as a party defendant. In each of these options he may litigate all of the issues of liability and damages [citation omitted]." 211 Kan. at 65.

We read the "or" in the above three choices as exclusive (either A, B, or C, but not all three or a combination thereof). We base this conclusion on the court's last sentence of the quotation: "In *each of these options* he may litigate *all of the issues of liability and damages*." (Emphasis added.) This sentence indicates that the three options are alternative, not cumulative.

Although Daryl did not initiate the suit against the tortfeasor, Erin, he was obligated under K.S.A. 60-213(a) to file a counterclaim against Erin once he was sued by Erin. Because Daryl's claim against Erin arose out of the same accident that resulted in Erin's claim against Daryl, this made Daryl's counterclaim compulsory. Although Daryl initially filed a counterclaim against Erin, he later dismissed it. Nevertheless, Daryl was required to maintain his counterclaim against Erin or be barred from later bringing an independent action on this claim. See *Stock v. Nordhus*, 216 Kan. 779, 781, 533 P.2d 1324 (1975).

In effect, Erin, the tortfeasor, selected the option that Daryl could have used to pursue his uninsured motorist claim. Under *Winner*, this would have been the third option described by the court.

The *Winner* court stated that "[m]ultiple litigation is never desirable." 211 Kan. at 65. Moreover, our Supreme Court in *Haas v. Freeman*, 236 Kan. 677, 682, 693 P.2d 1199 (1985), stated that "all issues in a lawsuit should be tried in one trial." See Scott, *Unin-*

*sured/Underinsured Motorist Insurance: A Sleeping Giant,* 63 J.K.B.A. 28, 36-37 (May 1994); see also *Albertson v. Volkswagenwerk Aktiengesellschaft,* 230 Kan. 368, 374, 634 P.2d 1127 (1981); *Eurich v. Alkire,* 224 Kan. 236, 238, 579 P.2d 1207 (1978) (discussing the need to bring all causes of action in one lawsuit).

Because all of the issues of liability and damages concerning Daryl's uninsured motorist claim could have been litigated in the *Lathen v. Bugner* suit, Daryl is precluded from having a second opportunity to litigate percentages of causal negligence. As a result, we determine that Daryl is bound by the percentages of comparative fault determined in the *Lathen v. Bugner* suit.

Reversed.